Shepherd et al. *v.* Hayes.

## ROYAL SHEPHERD AND OTHERS *v.* URIAH HAYES.

In ejectment, where the defendant claims by virtue of fifteen years' adverse possession, by himself and those under whom he claims, any deeds are admissible in evidence on the part of the plaintiff, which have a tendency either to fix the time or limit the extent of the defendant's adverse possession.

In such case no declarations made by the defendant's grantor, and made subsequent to the commencement of the suit, are admissible in evidence against the defendant, when unaccompanied with any evidence to connect him with the defendant.

Although the plaintiff introduced in evidence one of the intermediate conveyances by which the defendant claims the possession was transferred, executed within the fifteen years, and by it only a part of the lot claimed by the defendant was conveyed, still, if the jury find that the possession of the defendant and his grantors was not limited by that deed, but extended to the whole lot, under a claim to the whole lot, the deed can have no effect in limiting the defendant's right of recovery.

*It seems* that two petitions for a new trial of the same case, assigning the same, or similar, or even different reasons, cannot regularly be entertained at the same time.

The mere fact that a witness, used at a former trial of a case, was not used at the final trial, gives the adverse party no reason for asking for a new trial on the ground of surprise, when the court are satisfied that all the testimony, which he thereby lost the opportunity of using, could only have been used by him as impeaching testimony, if the witness had been introduced.

*It seems* that if one, who has been really, but not nominally, interested in a case as defendant, be discharged from his interest, so as to be used as a witness for the defence, no declarations of his, made while he was thus interested, can be proved by the plaintiff, except as impeaching testimony.

A new trial will not be granted on the ground of surprise, if the point, in reference to which the party claims he was surprised, was not material, or if the surprise might have been guarded against by the use of due diligence on the part of the party complaining.

EJECTMEMT for land in Barnard, described as Lot No. 169 of one hundred acre lots in said town. Plea, the general issue, and trial by jury. The writ was served May 6, 1839.

On the trial in the county court, (Nov. T. 1842) the plaintiffs showed a good title in themselves to the premises demanded, under the charter of the town, and it was conceded that the defendant was in possession of the premises at the commencement of the action. The defendant then introduced *parol* testimony, tending to prove that in June, 1823, Nathaniel Blanchard and Abel Blanchard entered upon said lot, claiming to be the owners thereof by purchase, and cleared two or three acres towards the northerly side of the lot, and about equally distant from the east and west lines of the lot. It appeared that the purchase of said lot was made by contract between Nathaniel Blanchard and one Joseph Forbes in the spring of 1823, and that, in pursuance of said contract, a deed was executed by Forbes to Nathaniel Blanchard, bearing date Nov. 27, 1823. There was no testimony tending to prove that any clearing was made by the said Blanchards upon the easterly half of said lot prior to the year 1824 ; but it did appear that in 1824, and in subsequent years, the clearing, commenced in 1823, was extended nearly the length of the lot on the northerly side.

The defendant also introduced parol testimony, tending to prove, that, at some subsequent period, Nathaniel Blanchard sold his interest in said lot to Abel Blanchard, and that Abel Blanchard sold his interest in the lot to the defendant ; but the time when said sales were made, and the time when the defendant took possession of the lot, did not appear.

The plaintiffs then introduced testimony tending to prove that the Blanchards did not commence their clearing upon said lot until June, 1824. They also offered in evidence a copy of the deed from Forbes to Blanchard, dated Nov. 27, 1823, and a copy of a deed from Nathaniel Blanchard to Abel Blanchard, conveying five eighths of said lot off the west end thereof. To the admission of these deeds the defendant objected, but the court overruled the objection. By the deed of Nov. 27, 1823, Forbes conveyed to Nathaniel Blanchard thirty four and a half acres off the west end of said lot, and forty four and a half acres off the east end of said lot.

The plaintiffs then offered to prove that Abel Blanchard, soon after the commencement of this suit, had acknowledged that the occupancy did not commence long enough since for him to hold by possession, and that it had been but little over fourteen years since

the possession had commenced. To this testimony the defendant objected, and it was excluded by the court.

The plaintiffs contended that the legal effect of the deed from Nathaniel Blanchard to Abel Blanchard was to interrupt any constructive possession which Abel might then have had to the three eighths of the lot, lying on the east end of the lot,—no actual clearing having at that time been commenced on said three eighths,—and that the defendant could claim no constructive possession of said three eighths, unless he furnished evidence of some new contract between him and Nathaniel Blanchard, made subsequent to the execution of the deed from Nathaniel Blanchard to Abel Blanchard, and transferring to the defendant said Nathaniel Blanchard's possession of said three eighths, — and requested the court so to instruct the jury ; but the court refused so to do.

But the court instructed the jury, that, if the Blanchards, more than fifteen years prior to the commencement of the plaintiffs' action, began to occupy said lot adversely, and if that possession had been continued, the defendant was entitled to hold so much of said lot as had been so occupied. Also, that, if the Blanchards, at the time they entered upon said lot, claimed the whole lot as their own, and exercised control over it, whether they made improvements upon different parts of it, or not, the defendant would be entitled to hold the whole of the lot, if such possession was continued for more than fifteen years prior to the commencement of the plaintiffs' action.

The jury were further instructed, that, if they should find that the first occupancy of the lot by the Blanchards was under a deed, and that that deed did not cover the whole of the lot, and that the Blanchards first entered upon the part covered by the deed, claiming no right to any part of the lot not covered by the deed, the defendant could only hold so much of the lot as was covered by the deed.

The court further instructed the jury, in relation to the deed from Nathaniel Blanchard to Abel Blanchard, that, if they found that the possession of the Blanchards was commenced in 1823, under a claim to the whole lot, and had continued uninterrupted to the commencement of this suit, the defendant would hold the whole lot, notwithstanding the whole lot was not conveyed by the deed from

Nathaniel Blanchard to Abel Blanchard. The jury returned a verdict for the defendant. Exceptions were taken by the plaintiffs, and the case was entered in the supreme court at the February Term, 1843.

At the February Term, 1843, the plaintiffs preferred their petition to the supreme court for a new trial in the case, on the ground of a surprise. The petition set forth, that, at the trial of the case in the county court, at the November Term, 1841, the defendant. introduced the said Abel Blanchard as a witness, and, to show a discharge of his interest, produced a quitclaim deed of said lot, then recently executed by said Abel Blanchard to the defendant, but not recorded, and proved that, on the execution of the said quitclaim deed, the defendant gave up to the said Abel Blanchard a bond, which he had till that time held against him, conditioned that, on receiving certain payments, the said Abel should convey said lot to the defendant by a good and sufficient deed; from which it appeared, as the petitioners represented, that Abel Blanchard had been the real defendant in interest until that time. That, at the next and final trial of said case, (Nov. T. 1842,) the defendant did not introduce said Abel as a witness, nor produce said quitclaim deed. That the plaintiffs were able to prove that Abel Blanchard, prior to the November Term, 1841, had had the sole management of the defence of said case, and that, while he was so interested and managing, he acknowledged that the possession, under which the defendant claimed, was commenced less than fifteen years prior to the commencement of the plaintiff's action; and that the plaintiffs had no doubt but that said Abel Blanchard would have been offered as a witness, and said quitclaim deed produced, by the defendant at the trial at the November Term, 1842.

The case was continued for a hearing, and now, at the present term of the court, the plaintiffs preferred their additional petition for a new trial in said case, also on the ground of surprise, and setting forth that, at the trials of the case previous to the final trial, the defendant had claimed that the clearing made in 1823 was near the centre of the lot from east to west, and southerly from a certain house named, and that no more definite description of the actual location of said clearing was given; that, at the final trial the plaintiffs proved that no clearing, corresponding with that description,

was made until 1825; that the same witnesses, who had formerly described the clearing made in 1823, were then called by the defendant, and described definitely the said clearing, made in 1823, as lying west of a certain small brook specified; that, since the final trial, the plaintiffs had ascertained by actual survey that the said brook, and the whole of the clearing made west of it, came within the part of the lot lying on the west end thereof, and conveyed by the deed from Forbes to Nathaniel Blanchard, and that no part of that clearing extended far enough east to come within the part extending through the centre of said lot, which said deed in no manner purported to convey, and of which the defendants had no deed whatever.

To this last petition the defendant pleaded in abatement the pendency of the prior petition for a new trial in the same case.

*T. Hutchinson* for plaintiffs.

1. We contend that the evidence of Abel Blanchard's confessions ought to have been admitted. It appeared that the legal title of the west part of the lot, under Nathaniel, was in him at the time when he made the concessions, and there was no testimony tending to show the title out of him. The loose parol testimony of a sale from Abel to Hayes no more than made Hayes tenant at will to Abel. When the deeds are produced, they govern with regard to title, and parol contracts merge in the deeds; and a title by deed cannot be conveyed away by parol.

2 The instructions in relation to the deed from Nathaniel to Abel authorized the jury to treat a parol contract of sale from Abel to Hayes as having the legal effect of an absolute deed of the three eighths at the east end of the lot, of which Abel had no deed himself, and of which he cannot be presumed to have been in possession; but every legal presumption would be, that the deed from Nathaniel to Abel, of the five eighths on the westward part of the lot, left Nathaniel the sole owner of the eastward three eighths.

As to the motion for a new trial:

Could the plaintiffs have known, or had reason to suspect, before the last trial, that Abel would not be produced as a witness, and that the deed from Abel to Hayes would not be produced, as on the former trial, though that deed was not recorded, the plaintiffs could

have given previous notice to the defendant to produce the deed, and might then have proved its contents,—which would have shown Abel to have been the owner of said five eighths until the execution of said deed, and that Hayes acknowledged this by receiving said deed ; and in this state of things the concessions of Abel would have been admissible, as the confessions of the party in interest.

Again, our supplemental petition for a new trial and additional affidavit show how the court and jury have been imposed upon by the defendant's producing testimony attempting to fix the improvement in 1823 on the centre of the lot, on the piece not included in the deed from Forbes to N. Blanchard, with a view to hold the whole lot by possession, and his readiness to shift his ground, when driven from it by the plaintiffs' testimony, and take the same witnesses and locate the same chopping west of the brook,—and that too late on the final trial for the plaintiffs to meet the new state of things thus presented. The facts now presented clearly show, that, if the defendant's possession began in 1823, it only extended over the west end of the lot.

*Tracy & Converse* for defendant.

1. The first exception relates to the exclusion of the admissions of the grantor of the defendant, made after his conveyance to the defendant, and after the pendency of this suit. Most clearly a grantor is incompetent to destroy, or in any way to affect, by his admissions, or otherwise, the right or title of land, after parting with all claim, or possession,—especially while such grantor is still living and a competent witness. *Carpenter* v. *Hollister*, 13 Vt. 553.

2. The plaintiffs' testimony ( besides that tending to contradict the time of possession, and which was left to the jury,) was merely a deed, showing that at one period Nathaniel Blanchard deeded to Abel the westerly five eighths of the lot. The court charged, that, if the Blanchards possessed, claiming all, and this continued and passed to the defendant, they, and he, would hold all. This was no error. The plaintiffs claimed and sued for the whole lot, as a unity, and the Blanchards and the defendant so claimed, as the jury have found ; now it is entirely immaterial how the Blanchards had, at some period, concluded to divide the lot, — especially as the pos-

session and claim of title remained a unity as to the plaintiffs and all others, and so passed to the defendant, as the jury must have found under the charge.

As to the petitions for a new trial :

The latter petition should be abated, there being a former one pending for the same cause. 1 Sw. Dig. 788. *Beardsley* v. *Gordon's Adm'r,* 3 Vt. 324. *McConnell* v. *Strong,* 11 Vt. 280. But if not, we contend,

1. As to the first petition, if Blanchard was the party in interest, in a sense that would render admissible his concessions made out of court, such concessions were equally admissible, whether he was offered as a witness, or not.

2. The testimony complained of as a surprise in the second petition was given upon the *only question* at issue between the parties,— viz. the possession by the defendant and his grantors of the lot sued for for fifteen years. Such testimony cannot create *surprise,* for which a party can be entitled to a new trial. *Dodge et al.* v. *Kendall,* 4 Vt. 31.

The opinion of the court was delivered by

WILLIAMS, CH. J.   In this case there are exceptions to the judgment of the county court, and also two petitions for a new trial. It appears that, on trial, the plaintiffs made out a title from the original proprietor.   The defendant relied entirely on proving an adverse possession, for fifteen years, in himself and those under whom he claimed, but introduced no deeds.   The plaintiff then introduced copies of deeds,—one from Forbes to Nathaniel Blanchard, and the other from Nathaniel Blanchard to Abel Blanchard, under whom the defendant went into possession.   These deeds were objected to, but we think they were admissible, as they had a tendency, with the other evidence introduced, to show both the time and the extent of the claim of those who first took possession of the land adverse to the title of the plaintiffs.

The plaintiffs then offered to prove the declarations of Abel Blanchard, made since the commencement of this suit, unaccompanied by any evidence to connect him with the present defendant. This testimony was clearly inadmissible, in any point of view.   The

case of *Carpenter* v. *Hollister*, 13 Vt. 552, is decisive against it. No declarations of Blanchard, made after this suit was brought, could be used in evidence against this defendant.

The plaintiffs then contended, and requested the court to charge the jury, that the legal operation and effect of the deed from Nathaniel Blanchard to Abel Blanchard was to break off any constructive possession which Abel Blanchard might have had to three eighths of the lot in question. We think the deed had no such controlling effect, as a legal and legitimate inference of law. It was evidence of the extent of the defendant's possession, but by no means conclusive; and if the defendant proved, to the satisfaction of the jury, that he claimed and possessed the whole lot for the period of fifteen years before the commencement of this suit, the deeds, on which the defendant did not rely, nor give in evidence, could not control, limit, nor locate his possession, nor entirely cut down the testimony which tended to establish a more enlarged possession. The court *would* have erred, had they, as matter of law, given such an effect to the deed. The charge of the court placed this subject correctly before the jury. Under this charge they must have found a possession of the whole lot adverse to the plaintiffs, and that Abel Blanchard did not confine his claim and possession to that part only which was deeded to him by Nathaniel Blanchard.

The plaintiffs have then petitioned for a new trial; and it appears that, after having filed one petition in court, and while that was pending, he preferred another. We are aware of no precedent, or practice, to warrant consecutive motions and petitions for new trials, or by which several such motions, or petitions, for the same, or similar, reasons, or even for different reasons, can be pending at the same time. It would be somewhat embarrassing in the administration of justice, and perplexing to the parties, to have a *great* number of these petitions brought from day to day. We have not, however, particularly attended to the plea in abatement of the second petition, as we are satisfied that neither affords any ground for our interference to disturb the verdict. I make these observations, that it may not be considered that the court consider this proceeding regular, by their forbearing to say any thing on the subject.

In both of these petitions the plaintiffs complained of surprise, because the defendant did not introduce Abel Blanchard as a wit-

ness, who, on former trials, had testified in the case. If the plaintiffs had said they were *disappointed*, it would have been more correct; and, if they were prepared with the testimony which they state in their petition, it would have been more a matter of surprise, if the defendant had introduced Blanchard as a witness. The testimony which the plaintiffs had, as to the declarations of Abel Blanchard, would have no other legitimate effect, than to impeach his testimony, although it had been probably urged to the jury, on former trials, for other purposes. Causes, which have had several trials, frequently present different aspects and changes as they progress from time to time; and I have witnessed several litigated cases, in which none of the witnesses, who testified at the first trial, were examined at the last.

It is said that none of the witnesses have before located the first clearing. This, however, we apprehend, is not of sufficient importance to entitle the plaintiff to carry this case to another jury. The deeds were on record; and, if the defendant claimed nothing farther than those deeds, it was as apparent at the first trial, as it is now, that the centre piece, as it is called, was not included in the deeds; and the plaintiffs could have fixed the attention of the witnesses to the particular spot, where the clearing was commenced. Numerous witnesses testified relative to the first chopping; but whether it was in the year 1823, or in 1824, was contested; and if it was material, the plaintiffs, by the use of ordinary diligence, could have fixed the spot where it was commenced, and could have ascertained and established it before the trial, as well as they can now. There is always an indefiniteness in witnesses in fixing any particular location. We apprehend, however, that this did not become so material as the plaintiffs now consider it, as, under the charge, the jury must have found a possession of the whole lot.

The judgment of the county court is affirmed, and the petitions are dismissed.